IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GRAIN DEALERS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV 04-019-JHP |
| CARL HILL d/b/a JCH MANAGEMENT FINANCIAL CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

# ORDER

Now before the court is Plaintiff's Motion for Summary Judgment, Defendant's Response to said motion, Plaintiff's Reply, Defendant's Supplemental Response and Plaintiff's Supplemental Reply. Plaintiff moves this court for summary judgment pursuant to Fed. R. Civ. P. 56.

The instant case was filed by Plaintiff seeking a declaratory judgment. Specifically, Plaintiff alleges Defendant violated the provisions of the contract when he failed to make monthly premium payments due under the insurance policy. Defendant has filed an answer and counterclaim asserting Plaintiff breached the contract by cancelling the insurance policy and that such action constitutes bad faith on the part of Plaintiff.

### DISCUSSION

In general, summary judgment is proper where the pleadings depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* An issue is "material" if proof thereof

might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249.

In considering a motion for summary judgment, this court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988).* In regard to the necessary burdens, however, the Supreme Court has instructed that:

> in cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.

*Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).* Furthermore, if on any part of the prima facie case there is insufficient evidence to require submission of the case to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).*

**BACKGROUND**

The record establishes Plaintiff, Grain Dealers Mutual Insurance Company ("Grain Dealers"), is an Indiana corporation qualified to transact insurance business within the State of Oklahoma. In 1999 and 2001 Grain Dealers filed forms and policies with the Board of Property and Casualty Rates of the State of Oklahoma for approval of their Commercial Direct Bill Payment Plan and revisions of that plan.

Prior to August 29, 2003, Defendant, Carl Hill d/b/a JCH Management Financial Corporation ("Hill"), operated a place of business in Durant, Oklahoma. To protect the building and contents from damage by fire and other casualty, Hill entered into a contract of insurance with Grain Dealers. Hill renewed his policy effective May 28, 2003 through May 28, 2004. At the time of renewal, Hill

owed Grain Dealers a balance of $20.00.

Payments were to be made monthly. The premium for the entire year was $1,686.00. The first payment of $301.00 was made by Hill on May 12, 2003. This payment was accepted by Grain Dealers. Grain Dealers sent Defendant a bill in June with a due date of June 28, 2003, in the amount of $145.50. Hill did not remit a payment by the due date.

On July 7, 2003 Grain Dealers mailed its Notice of Cancellation. The Notice stated that if the minimum premium payment due of $306.00 was not received by July 27, 2003, the policy would be cancelled due to non-payment of the premium. The Notice of Cancellation was mailed to Hill at the address shown on the policy. A Receipt for Accountable Mail issued by the Postmaster of Indianapolis, Indiana, confirms the mailing of the Notice of Cancellation on July 7, 2003. An Agent Copy of the Notice of Cancellation was received in the offices of Hill's insurance agency, the Arnett Insurance Agency, Inc., on July 10, 2003.

On July 9, 2003, Hill mailed a payment of $145.50 which was less than the minimum policy premium due as set forth in the Notice of Cancellation. Grain Dealers received this payment on July 14, 2003, and deposited the same, with the payment clearing Hill's bank on July 15, 2003. No additional funds were paid and the policy was cancelled effective July 27, 2003.

On August 20, 2003, Grain Dealers generated a refund to Hill of the $145.50 June payment less a $20.00 late fee. The description which accompanied the check indicated "account cancelled." On August 25, 2003, a Cancelled Account Report was received in the offices of the Arnett Insurance Agency, Inc., which showed the Hill account to have been cancelled. On August 29, 2003, Hill reported that a fire had occurred at his place of business totally destroying the building and its contents.

Following the loss, Hill contacted Butch Arnett ("Arnett") with the Arnett Agency to report the claim. Arnett advised Hill the policy had been cancelled, but submitted the claim at the request of Hill. The claim was denied by Grain Dealers for the reason the policy had been cancelled for nonpayment of premium.

The uncontroverted record in the instant case reveals Grain Dealers complied with the terms of the insurance contract and Oklahoma law. The Notice of Cancellation was sent to Hill and the policy cancelled effective July 27, 2003, for nonpayment of premium. In paragraph A of the Common Policy Conditions in this policy, it is stated:

A. Cancellation

1. The first Named Insured shown in the Declaration may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel the policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premiums; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

Paragraph 2 of the Cancellation Common Policy Conditions was later amended and provides as follows:

2. We may cancel this policy by mailing or delivering the First Named Insured written notice of cancellation at least:

> a. 10 days before the effective date of cancellation if we cancel for nonpayment of premiums; or
>
> b. 30 days before the effective date of cancellation if we cancel for any other reason.
>
> After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:
>
> (1) Nonpayment of premium; . . .

After paying the initial premium, Hill did not make the June 2003, premium payment by its due date of June 28, 2003. In accordance with the terms of the policy, a Notice of Cancellation, dated July 7, 2003, was sent to Hill at the address shown on the policy. A Notice of Cancellation was also received in the Office of the Arnett Insurance Agency. The minimum premium amount then due was $301.00. Instead of paying the amount due, on July 9, 2003, Hill sent a check to Grain Dealers in the amount of $145.50 which was insufficient to continue the policy in effect. No further payment was sent by Hill. Accordingly, on July 27, 2003, the policy was cancelled for nonpayment of premium.

It is clear from the record the policy provisions concerning cancellation were complied with by Grain Dealers. The Notice of Cancellation was mailed to Hill at least 10 days before the effective date of cancellation, and the Proof of Mailing issued by the Postmaster for Indianapolis, Indiana, was sufficient evidence of mailing pursuant to both the terms of the policy, and Oklahoma law. On August 20, 2003, Grain Dealers issued a refund check to Hill in the amount of $127.50.

Further supporting cancellation of the policy is the fact that on August 25, 2003, four days before the fire, Hill's agent, Arnett, received in his office a Cancelled Accounts Report indicating the account of Carl Hill d/b/a JCH Management Financial Corporation had been cancelled effective July 27, 2003.

Hill contends he did not receive the Notice of Cancellation. However, actual receipt of the notice of cancellation is not a prerequisite to cancellation when the insurer has actually mailed notice in accordance with policy provisions. *Richardson v. Brown*, 443 F.2d 526 (10th Cir. 1971); *State Farm Mutual Insurance Co. v. Chaney*, 272 F.2d 20 (10th Cir. 1959); *Midwestern Insurance Co. v. Cathey*, 262 P.2d 434 (Okla. 1953).

Hill argues a genuine issue of material fact exists as to "whether Grain Dealers violated Oklahoma Insurance Board Regulations and its own internal rules and methods by not reinstating Carl Hill's insurance policy on July 15, 2003, when it deposited the June 28, 2003, payment on July 15, 2003, prior to the cancellation date of July 27, 2003." However, on July 14, 2003, when the $145.50 payment was received by Grain Dealers, the policy was not subject to reinstatement as it had not been cancelled. Cancellation did not occur until July 27, 2003. As no payments were made after the date of cancellation, there was no basis to reinstate the policy.

Although Hill maintains he never received the Cancellation Notice in the mail, the record reveals he also failed to make the July 28, 2003, and August 28, 2003, payments according to the terms of his contract. The fire did not occur until August 29, 2003. Accepting Hill's contention that he did not receive notice of the cancellation as true, which the court must in review of the summary judgment motion, only begs the question as to why Defendant did not make the July 28, 2003, and August 28, 2003 payments. The failure to make these payments negates Hill's argument that lack of notice prejudiced him and prevented him from curing the deficient June 2003 payment. If Hill thought he had made a sufficient payment in June, which he claims, he would have also made the July and August 2003 payments before learning on August 29, 2003, the policy had been cancelled.

Further, Hill knew or should have known, based on documents in his possession, Grain Dealer's policy that underpayments were not acceptable. May and June 2003 bills received by Hill from Grain Dealers provided: "IMPORTANT INFORMATION ABOUT YOUR DIRECT BILL ACCOUNT, You must pay at least the minimum due on a statement to prevent cancellation. Underpayments are not acceptable." Additionally, the documents set forth both the future monthly payment schedule showing precise due dates, as well as the minimum amount due. Hill should have been aware the full premium due must be paid to avoid cancellation. Therefore, the Court finds Defendant did not pay his premiums when due, his policy of insurance was cancelled for that reason, and there was no coverage on the date of the fire.

Accordingly, Plaintiff's Motion for Summary Judgment is granted.

**IT IS SO ORDERED** this 15th day of May 2006.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma